IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON SEGERS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 13-2413 |
| v. | : | |
| | : | |
| SETH WILLIAMS, et al., | : | |
| Defendants. | : | |

**January 27, 2014**                                                                                                    **Anita B. Brody, J.**

### MEMORANDUM

Plaintiff Brandon Segers ("Segers") brings suit under 42 U.S.C. § 1983 ("§ 1983") against Philadelphia District Attorney Seth Williams ("Williams") and Assistant District Attorneys John Does 1 and 2 ("ADAs"), in their individual capacities.[1] Segers claims that the three defendants (collectively "DA Defendants") violated his constitutional rights and federal law during the prosecution of Segers for driving under the influence and possession of marijuana. Segers also brings state tort claims for false arrest, false imprisonment, and malicious prosecution under Pennsylvania law.[2] The DA Defendants move to dismiss Segers' Complaint in its entirety. For the reasons stated below, I will grant the DA Defendants' Motion to Dismiss.

---

[1] Segers also brought suit against the City and County of Philadelphia, Police Commissioner Charles Ramsey, and four police officers. These defendants were voluntarily dismissed from this case on August 13, 2013. *See* ECF No. 10. Only facts and claims relevant to the remaining defendants are discussed in this memorandum.

[2] Federal question jurisdiction lies over plaintiff's § 1983 claims under 28 U.S.C. § 1331, and supplemental jurisdiction lies over plaintiff's state law tort claims under 28 U.S.C. § 1367.

I.  **BACKGROUND**[3]

On May 26, 2011, the Philadelphia Police pulled over Segers' car for a broken side window. The officer who stopped Segers claimed that he smelled marijuana and observed empty narcotics packaging next to the driver's seat, as well as smoked marijuana cigars in an ash tray. The police arrested Segers, tested his blood for the presence of controlled substances, and charged Segers with possession of marijuana and driving under the influence of marijuana. The Philadelphia District Attorney's Office subsequently initiated prosecution of Segers for these charges ("DUI Case"). Segers remained in custody until the resolution of the DUI Case.

The Municipal Court of Philadelphia County scheduled Segers' trial in the DUI Case for July 22, 2011. On July 22nd, the Commonwealth explained to the court that it had not yet received the results from Segers' blood test and requested a continuance. As a result, the court rescheduled the trial for September 19, 2011. The court ordered the Commonwealth to give Segers' blood test results to defense counsel on September 14, 2011, five days before the new trial date.

The DA's Office received the blood test results on July 29, 2011, seven days after the continuance. Segers' test results came back negative for all substances. Despite the fact that defense counsel requested the results both before and after the DA's Office received them, the DA's Office did not communicate the results to defense counsel until the court's deadline on September 14, 2011. At the September 19th court proceeding, the DA's Office withdrew the charges. Thus, the DA Defendants failed to turn over the exculpatory blood results for more than 40 days after the results came back negative and allowed Segers to remain in prison for that time.

---

[3] Unless otherwise stated, the facts are taken from the Complaint or from the Municipal Court of Philadelphia County Docket for Segers' DUI Case, which was attached to the DA Defendants' Motion to Dismiss as Exhibit C. *See* ECF No. 5. In deciding a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The DA Defendants' actions caused Segers to lose his job, lose his apartment, and miss the funerals of close family members.[4]

## II. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted). Thus, a court may "consider matters of

---

[4] Segers alleges that a second incident of false arrest occurred in 2012, but the Complaint only implicates the police defendants in this incident and does not mention any involvement of the prosecutors in the events underlying that claim. This memorandum does not address that incident, because all police defendants have already been dismissed.

3

public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

### III. DISCUSSION

#### A. Federal Claims

Segers brings a variety of civil rights claims against the DA Defendants under 42 U.S.C. § 1983.[5] "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary,* 399 F.3d 279, 281 (3d Cir. 2005). Segers' § 1983 claims against all DA Defendants include malicious prosecution, abuse of process, and violation of due process. Segers' § 1983 claims directed against the ADAs alone include false imprisonment, violation of the Fourth Amendment, and conspiracy to violate civil rights.[6] Segers' § 1983 claims directed against Williams alone include failure to intervene and failure to supervise. Segers brings all of these claims against the DA Defendants in their individual capacities.[7] The DA Defendants move to dismiss all of Segers' federal claims on the ground that they are entitled to absolute immunity for any actions taken in the course of their roles as advocates for the state.

---

[5] The Complaint also lists in passing a variety of other federal statutes that are not included as separate counts in the Complaint. These statutes have no apparent relation to the case or do not provide independent causes of action. To the extent Segers intended to bring such claims, they are insufficiently pleaded.

[6] It is ambiguous whether Segers also intended to bring a claim under 42 U.S.C. § 1985, which provides a cause of action for "Conspiracy to interfere with civil rights." To the extent Segers may have intended to assert a claim under 42 U.S.C. § 1985, the court will not resolve this ambiguity for the purposes of this memorandum because the relevant absolute immunity analysis is the same for § 1983 and § 1985 claims. *See Waits v. McGowan*, 516 F.2d 203, 205 (3d Cir. 1975) (treating § 1983 and § 1985 claims the same for the purposes of immunity); *Patterson v. City of Philadelphia*, No. 08-2140, 2009 WL 1259968, at *9 (E.D. Pa. May 1, 2009) ("The doctrine of absolute prosecutorial immunity precludes conspiracy-based claims as well.") (collecting cases).

[7] Segers also sued the DA Defendants in their official capacities. In his Response to the Motion to Dismiss, however, Segers did not oppose the DA Defendants' arguments that his official capacity claims should be dismissed. On January 23, 2013, I confirmed with Segers' counsel that Segers, in fact, intended to concede his official capacity claims against the DA Defendants, and I dismissed these claims as unopposed. *See* ECF No. 15.

In *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), the Supreme Court held that the determination of whether a prosecutor is entitled to absolute immunity for his/her conduct depends on the function the prosecutor was performing. *See also Burns v. Reed*, 500 U.S. 478, 486 (1991). Prosecutors are absolutely immune from § 1983 liability for acts performed in the course of their function as advocates for the state. *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 135–36 (3d Cir. 2006). Absolute immunity thus attaches to acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and . . . presenting the State's case." *Imbler*, 424 U.S. 409, 430–31. In contrast, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings" are generally afforded only qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

To determine what level of immunity applies, a "court must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). "Although by no means dispositive, . . . the period during which prosecutors are most likely functioning [as advocates] . . . is the time between indictment and dismissal, acquittal, or conviction." *Odd v. Malone*, 538 F.3d 202, 211 (3d Cir. 2008).

### 1. The ADAs

Segers bases his claims on the failure of the ADAs to promptly convey the exculpatory test results to defense counsel. Thus, the critical inquiry is whether this conduct implicates the ADAs' advocacy function or whether this conduct is properly characterized as administrative.

Actions relating to a prosecutor's handling and presentation of evidence are squarely within a prosecutor's advocacy function—and thus entitled to absolute immunity. *See Henderson v. Fisher*, 631 F.2d 1115, 1120 (3d Cir. 1980) ("The handling of evidence is clearly within the sweep of 'initiating and presenting the State's case', and the prosecutor is immune from Section 1983 liability for such decisions."). This absolute immunity extends even to claims that prosecutors have deliberately withheld exculpatory evidence. In *Yarris v. County of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006), the Third Circuit explicitly held that the ADAs were "absolutely immune from claims based on allegations that they 'intentionally concealed' exculpatory evidence *prior* to trial." In reaching this conclusion, the *Yarris* Court noted that:

> It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity. As the Supreme Court explained in *Imbler,* the deliberate withholding of exculpatory information is included within the legitimate exercise of prosecutorial discretion.

*Yarris*, 465 F.3d at 137 (internal quotation marks omitted); *see also Imbler*, 424 U.S. at 413–17, 431 n.34 (finding that absolute immunity shielded a prosecutor's suppression of exculpatory evidence). Like the complete failure to disclose certain exculpatory evidence, the timing of a prosecutor's disclosure of exculpatory evidence is intimately connected to his/her role as an advocate for the state and is thus entitled to absolute immunity. *See Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009) ("[I]f [during trial] the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated *Brady v. Maryland* . . . ; but they would be absolutely immune from personal liability.").

Here, the ADAs actually did convey the exculpatory evidence to defense counsel prior to trial, but neglected to do so as quickly as Segers would have wished. As with a prosecutor that fails to turn over exculpatory evidence at all prior to trial, a prosecutor who turns over

exculpatory evidence, but delays in doing so, is entitled to absolute immunity. Accordingly, the ADAs' conduct falls decisively within their advocacy function, and they are absolutely immune from liability under § 1983.

Segers argues, relying almost entirely on *Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011), that the ADAs' handling of the exculpatory evidence should be classified as administrative, rather than advocative. In *Schneyder*, the Third Circuit denied absolute immunity for a prosecutor's failure to report to a court about the status of a detained material witness. The prosecutor had secured the witness' detention and the judge who issued the warrant had directed the prosecutor to notify him if the trial was continued so he could immediately release the witness. When the trial was continued for four months, the prosecutor failed to notify the judge—thus acting in direct derogation of the judge's order—and the witness unnecessarily remained in prison for 48 days.

The *Schneyder* Court examined the nature of this conduct and found that the prosecutor was not entitled to absolute immunity because her failure to report to the judge implicated her administrative function. In reaching this conclusion, the Third Circuit noted that it could "'imagine few circumstances under which we would consider the act of disobeying a court order or directive to be advocative . . . .'" *Schneyder*, 653 F.3d at 332 (quoting *Odd*, 538 F.3d at 214). Additionally, the *Schneyder* Court examined "the custom and practice of the Philadelphia courts . . . assign[ing] sole responsibility for monitoring material witnesses . . . to individual prosecutors, and [found] that the gist of this obligation . . . [wa]s 'plainly administrative.'" *Id*. Accordingly, the Third Circuit held that this administrative failure did not implicate the prosecutor's advocacy function.

Unlike *Schneyder*, this case does not involve a material witness or an administrative duty to report, but instead implicates the ADAs' advocative function of handling and sharing exculpatory evidence. Furthermore, the ADAs did not violate the municipal court's order to share the blood test results by September 14, 2011. Rather, they complied with the order and sought dismissal of the case against Segers five days later at the next court date. In light of the above, *Schneyder* does not dictate the result in this case.

### 2. DA Williams

District Attorney Williams—like the ADAs—is also immune from Segers' claims. Any personal involvement Williams may have had with the handling of the exculpatory blood test results would similarly implicate his advocacy function.[8] Williams does not receive less immunity for his advocative conduct than do the ADAs under his supervision. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009) (supervisory prosecutors also receive absolute immunity for conduct implicating their advocacy function). Thus, for the same reasons that the ADAs receive absolute immunity for their handling of the exculpatory evidence, DA Williams also receives absolute immunity for his role in handling that evidence.

Although most of Segers' claims against Williams would implicate Williams' advocacy function, one claim against Williams—that Williams failed to adequately supervise or train the ADAs in transferring exculpatory evidence to defendants—can arguably be classified as

---

[8] Segers' Complaint presents no facts that suggest that Williams had knowledge of or had personal involvement in a decision to delay the transmission of Segers' blood test results. It is therefore impossible to know what potential role Williams had in the alleged misconduct, in any. To be individually liable under § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. Because the Complaint does not present facts that indicate Williams had any personal involvement in the alleged misconduct, Segers' individual capacity claims against Williams are insufficiently pleaded. Thus, even if Williams were not entitled to absolute immunity, Segers' claims against him would still fail.

challenging an administrative action. Williams, however, is also immune from this claim as a result of the Supreme Court's decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009).

In *Van de Kamp*, the Supreme Court granted a DA absolute immunity against a failure to train claim, because the allegedly defective training concerned tasks related to a prosecutor's basic trial duties and advocacy function. The plaintiff in *Van de Kamp* argued that the DA failed to adequately train ADAs on their constitutional obligation to provide the defense with impeachment-related (*Giglio*) information, and that this failure should not be afforded absolute immunity because it was administrative. 555 U.S. at 343–44. The Court agreed that the failure to train/supervise claim was properly classified as challenging the DA's administrative function. *Id*. at 344. The Court also observed, however, that because this supervisory task "concern[ed] how and when to make impeachment information available at a trial[,]" it was "directly connected with [a] prosecutor's basic trial advocacy duties." *Id*. at 346. Because of this connection, the Court concluded that supervisory prosecutors enjoy absolute immunity from claims asserting an administrative obligation—such as training—"that itself is directly connected with the conduct of a trial." *Id.* at 344. Otherwise, a plaintiff could easily re-frame a prosecutor's trial failure as a supervisory prosecutor's failure to train. *Id.* at 347.

The plaintiff's claim in *Van de Kamp*—that a supervisory prosecutor should be liable for a failure to train with respect to how and when to make impeachment information available to the defense—is logically indistinguishable from Segers' claim: that a supervisory prosecutor should be liable for a failure to train with respect to how and when to make exculpatory information available to the defense. Like the DA's failure in *Van de Kamp*, DA Williams' alleged failure to train the ADAs on how to share exculpatory evidence would involve an

9

administrative obligation directly connected with the ADAs' basic trial advocacy duties. Therefore, Williams is absolutely immune from Segers' failure to train and supervise claim.

### B. State Law Claims

Segers also brings a variety of state tort claims against the DA Defendants, including false arrest, false imprisonment, and malicious prosecution. Because I have dismissed all of Segers' federal claims, I will decline to exercise supplemental jurisdiction over his state law tort claims. Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. "Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995).  There is no affirmative justification for retaining jurisdiction over Segers' state law claims.  Because I am granting the DA Defendants' motion to dismiss each of the federal claims against them, I decline to exercise supplemental jurisdiction over Segers' state law tort claims.  I will grant the DA Defendants' motion to dismiss Segers' state tort claims, but without prejudice to Segers to re-file these claims in state court.[9]

### IV.   CONCLUSION

Because the DA Defendants are absolutely immune from liability for their actions under § 1983, I will dismiss all of Segers' federal claims against them in their individual capacities. I will also dismiss all of Segers' state law claims, without prejudice, because I decline to exercise supplemental jurisdiction.

---

[9] Although the DA Defendants seek dismissal of these claims on substantive grounds, I will dismiss these claims solely on the basis that I decline to exercise supplemental jurisdiction over them.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: